**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Willie J. REED, Defendant–Appellant.**

Nos. 90–1263, 92–1333.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 10, 1992.

Decided Aug. 12, 1993.

Rehearing and Suggestion for Rehearing In Banc Denied Sept. 8, 1993.

---

Kit R. Morrissey, Asst. U.S. Atty., Crim. Div., Fairview Heights, IL (argued), for plaintiff-appellee in No. 92–1333.

Before COFFEY and MANION, Circuit Judges, and WOOD, Jr., Senior Circuit Judge.

COFFEY, Circuit Judge.

On November 17, 1989, the defendant, Willie J. Reed, was convicted before a jury of two counts of possession with intent to distribute cocaine and two counts of distributing cocaine in violation of 21 U.S.C. § 841(a)(1). On January 19, 1990, the district court sentenced Reed to 121 months in confinement. Reed filed a timely appeal of his conviction but the appeal was held in abeyance pending the resolution of a number of post-trial motions. On August 12, 1991, Reed filed a motion for a new trial "in the interests of justice" which the district court denied on January 24, 1992. Reed appealed and his two appeals were consolidated by this court. We affirm.

## I. BACKGROUND

On March 9, 1989, The Drug Enforcement Agency ("DEA") and the Illinois Department of Criminal Investigation ("DCI") began an investigation of Willie J. Reed, who was suspected of selling cocaine. Edward Ross, a drug dealer turned government informant, had identified Reed as the source of his cocaine. Ross was cooperating with the DCI because he had been arrested for selling cocaine to Richard Woods, an undercover DCI agent.[1] As part of the Reed investigation, the DEA directed Ross to call Reed and arrange a cocaine purchase. On March 11, 1989, and on April 20, 1989, Ross and/or Agent Linda Harold of the DEA purchased cocaine from Willie Reed at his business office.

Shortly after the April 20 drug buy, Agent Harold obtained an arrest warrant for Reed as well as a search warrant for his office. At the time Reed was arrested by DEA and DCI agents, they seized drugs as well as drug paraphernalia from his office. Reed

Robert Haida, Asst. U.S. Atty., Crim. Div., Fairview Heights, IL, for plaintiff-appellee in No. 90–1263.

Richard C. Moenning, Chicago, IL (argued), for defendant-appellant.

---

1. Edward Ross pled guilty to state charges for his part in selling cocaine to Agent Woods. Ross received a sentence of probation because of his cooperation in the Reed investigation.

was charged in a five-count indictment on August 25, 1989. Count I charged that on April 21, 1989, Reed possessed, with intent to distribute, 131 grams of cocaine in violation of 21 U.S.C. § 841(a)(1). Count II charged that on April 21, 1989, Reed used and carried a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c). Count III charged that Reed distributed 27 grams of cocaine on March 11, 1989, in violation of 21 U.S.C. § 841(a)(1). Count IV charged that on April 21, 1989, Reed distributed 28 grams of cocaine in violation of 21 U.S.C. § 841(a)(1). Count V charged that Reed, on April 21, 1989, possessed with intent to distribute fifty grams or more of cocaine base. Prior to trial, the defendant filed a motion requesting that a defense expert be permitted to examine the alleged cocaine but the court denied the request. A jury convicted Reed on four of the five counts, acquitting him of Count II (the weapons violation).

## II. ISSUES

The defendant-appellant Reed raises several issues on appeal: (1) whether the evidence presented on each of the counts was sufficient to support Reed's conviction, (2) whether the defendant was denied due process (a) from the trial court's discovery ruling, (b) from comments made by the district judge during trial, (c) from an evidentiary ruling and (d) from comments made by the prosecutor in closing argument, and (3) whether the trial court erred in denying the defendant's motion for a new trial.

## III. DISCUSSION

### A. *Sufficiency of the Evidence* [2]

■ In the defendant's initial argument, he states "the prosecution's evidence does not support the jury's verdict beyond a reasonable doubt." The defendant goes on to allege that the government failed to establish the specific intent required as to each of the

crimes charged and further that the government failed to demonstrate his predisposition to commit the crimes. We read his argument as a challenge to the sufficiency of the government's evidence that he was responsible for the commission of the crimes in question. The defendant bears a heavy burden when challenging the sufficiency of the evidence. *United States v. Olson,* 978 F.2d 1472, 1478 (7th Cir.1992). In *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), the Supreme Court stated that a sufficiency of the evidence challenge will be upheld if "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This circuit recently stated that "we will not reweigh the evidence or judge the credibility of witnesses" when reviewing the sufficiency of the evidence. *United States v. Maholias,* 985 F.2d 869, 874 (7th Cir.1993). "We must affirm unless the record is barren of any evidence, regardless of weight, from which the trier of fact could find guilt beyond a reasonable doubt." *United States v. Atterson,* 926 F.2d 649, 655 (7th Cir.1991).

■ Reed separates his argument challenging the sufficiency of the evidence into two components: (1) whether the prosecution established that he possessed the required specific intent and (2) whether the prosecution's evidence established that he was the sole source of Ross' cocaine. After review of the indictment, we note that the government did not have the burden of presenting evidence on the issue of whether Reed was the sole source of Ross' cocaine supply. Despite Reed's allegations to the contrary, the government never charged that Reed was Ross' sole source of cocaine. The indictment, although it did not name the source of Reed's supply, charged him with possession of cocaine with intent to distribute. The government was required to establish beyond a reasonable doubt that:

---

**2.** Before we begin our analysis of the sufficiency of the evidence, we note that Reed's counsel discussed in his brief the defense of entrapment from a recent Supreme Court opinion on that subject. *See Jacobson v. United States,* —— U.S. ——, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992).

The issue of entrapment is not before us because Reed failed to put forth an entrapment defense at trial and, at oral argument, defense counsel declared he was not relying on entrapment but rather on the government's failure to prove specific intent.

"First: the defendant knowingly or intelligently possessed cocaine, a Schedule II narcotic controlled substance; and second: the defendant possessed cocaine, a Schedule II narcotic controlled substance, with intent to distribute it; and, third: the defendant knew the substance was a narcotic controlled substance."

Seventh Circuit Pattern Jury Instruction No. 6.01. The indictment also charged Reed with distribution of cocaine requiring the government to prove "First: the defendant did knowingly and intentionally distribute cocaine, a Schedule II narcotic controlled substance; and second: the defendant knew the substance was a narcotic controlled substance." *Id.* It is quite obvious from the indictment, the evidence received at trial, and these two pattern jury instructions that the government was not required to establish that Reed was the sole source of Ross' cocaine.

■ Secondly, Reed argues that the government failed to demonstrate that Reed possessed the specific intent to distribute cocaine. The defendant maintains that absent Ross' testimony, the government evidence was insufficient to establish Reed's guilt. Reed challenges the reliability of Ross' testimony alleging that Ross had previously been convicted of official misconduct as a police officer in 1975 and that Ross admitted to lying during the course of the Reed investigation.

The evidence against Reed includes taped telephone conversations of March 9, 10, and 11, in which Ross, the government informant, is recorded negotiating with Reed to purchase an ounce of cocaine. On March 11, 1989, Ross was searched and equipped with a body recording device, (a procedure that was followed on each of the occasions that Ross met with Reed). DEA Special Agent Linda Harold accompanied Ross to Reed's place of business to complete the transaction. Ross entered the building while Agent Harold waited in her vehicle and at the same time Agent Richard Woods of the Illinois Depart-

ment of Criminal Investigation ("DCI") monitored the conversation between Ross and Reed. Only two voices were recorded on the tape which were later identified by Ross as his and Reed's. After two or three minutes Ross returned to Harold's vehicle with a bag containing twenty-seven grams of cocaine. After inspecting the cocaine, Harold handed Ross $1,200.00 in cash which Ross in turn gave to Reed.[3]

On April 20, Ross telephoned Reed to arrange another cocaine buy and Reed agreed to make the sale the following day. On April 21, Ross returned to Reed's office accompanied by Agent Harold. Harold waited in the lobby area while Ross went into the defendant's office. Some three or four minutes later, Harold was invited into the defendant's office. Harold was invited into the defendant's office. Harold testified as follows:

Q: What did you receive at that time, if anything, from Mr. Reed?

A: I received an ounce of cocaine.

Q: What, if any other contraband, did you see at that time or substances at that time?

A: When I walked into the office on the desk in front of—on the desk of the office was a package which was opened and it contained a lot of white powdery substance, * * *

Q: What, specifically, did you receive from Mr. Reed? Describe for the jury what you actually were handed from him.

A: As I stood in the office, Mr. Reed, with a razor blade took some white powdery substance from this large package on his desk and dipped from that package some white powdery substance into a small baggie.

Q: What did he do with the baggie before he gave it to you?

A: He put the empty baggie on a scale that was also on the desk beside his desk. There was a second desk there.

Q: What happened after he placed the baggie on the scale?

---

3. On April 4, 1989, Ross contacted Reed and met with him for a second time in a conversation monitored by DEA agents through a body recording device. At that time, Ross turned over $100.00 to Reed in payment of an old debt and also discussed future cocaine transactions. No criminal charges resulted from this contact.

A:  He told me that it weighed a gram and he took the baggie and put the cocaine, put the white powdery substance, inside the baggie and he took the baggie, now holding the white powdery substance, and put it back on the scale and told me that it was an ounce of cocaine.

Q:  Is it at that time that you received it from Reed?

A:  At that time I gave Reed $1,200 United States currency and he gave me the package.

During the sale, the defendant gave Agent Harold an accelerated course in cocaine trafficking, including a lesson on the various colors of cocaine, "cooking" cocaine, snorting cocaine, the weight and price of a kilo, and the various ways in which a kilo is wrapped. He also explained that he obtained his cocaine by flying in a private plane to Florida using his pilot's license and then mailing the kilos back to St. Louis.  On other occasions he stated that he used couriers to transport the drugs.  Additionally, Reed discussed with Agent Harold the possibility of her becoming a courier, and stated that since one of his couriers lost $50,000 in a shootout "I ain't got back on my feet."  At the conclusion of the cocaine trafficking lecture, Harold arranged to return that afternoon to purchase some additional coke.  Shortly after leaving Reed's office, the agent obtained search and arrest warrants for Willie Reed.  When she returned to Reed's office that afternoon, the defendant-appellant had three one ounce bags for sale.  She requested a fourth but he stated that he might not be able to put together the fourth.  Under the pretense of returning to her car to get the money, Harold left Reed's office which was the agreed upon signal for the agents to move in, arrest the defendant, and execute the search warrant.  The search revealed a large amount of drug paraphernalia including a triple beam (drug) scale, a box of plastic baggies (sandwich size), a brown satchel containing several items of suspected cocaine, a box of Arm & Hammer baking soda, the $1,200 Harold used to purchase the ounce of cocaine earlier that day, a small quantity of cocaine and cocaine base, and several antique guns.

As for Ross' challenge to the sufficiency of the evidence, the evidence presented at trial, recounted above, is not only sufficient, it is overwhelming proof of Reed's guilt.  The government presented direct evidence of Reed possessing, selling, packaging and weighing cocaine in his office through the testimony of Agent Harold, together with the taped conversations between the informant Ross and the defendant, as well as the physical evidence seized from Reed's office.  Despite Reed's allegation of Ross' unreliability, we are convinced that the evidence received meets the sufficiency of the evidence standard and that his conviction would stand even without the testimony of Ross.  Thus we affirm the jury's verdict and hold that the defendant has failed to meet the "heavy burden" of demonstrating that the evidence was insufficient to establish his guilt.

### B.  Due Process Challenge

#### 1.  Denial of Discovery

Reed maintains that the court's pre-trial discovery ruling (denying the defendant an opportunity to test the alleged cocaine) coupled with the court's comments concerning the length of defense counsel's cross-examination of government witnesses denied the defendant due process of law.  Eleven days before trial, defense counsel filed a motion with the court requesting an opportunity to examine the alleged cocaine.  Even though the motion was untimely and not accompanied by a brief, the government had no objection to the defendant testing a small sample of the cocaine.  The trial court, however, denied the defendant's request and cited *United States v. Napue,* 834 F.2d 1311, 1316 (7th Cir.1987) in support thereof.  We review a district court's denial of discovery in a criminal case for abuse of discretion.  *United States v. Phillips,* 854 F.2d 273, 277 (7th Cir.1988); *see also United States v. Valona,* 834 F.2d 1334, 1341 (7th Cir.1987) (holding that a court's discovery rulings are not an abuse of discretion "if reasonable men could differ as to the propriety of the court's action").

The defendant claims that the district judge's denial of discovery inhibited the defendant's cross-examination of the govern-

ment's expert witnesses concerning the alleged cocaine, but the defendant's brief has failed to offer any argument explaining what additional discovery might have established. Furthermore, the defendant never claimed that the substance he possessed and distributed was not cocaine nor has he alleged, much less demonstrated with accompanying legal support, that he was entitled to test the cocaine. The district court offered two reasons for denying the defendant's motion to test the evidence. The court stated that the defendant had failed to cite any authority in support of his motion and the court cited *Napue* as support for its holding that the defendant was not entitled to discovery. Rule 16 of the Federal Rules of Criminal Procedure entitles the defendant to some pretrial discovery but that right is not without limits. In a pre-trial order dated September 5, 1989, a United States magistrate set forth the pre-trial discovery guidelines. The magistrate wrote:

"(3) If additional discovery or inspection is sought, the party seeking it shall confer with opposing counsel within ten (10) days of the arraignment with a view to satisfying these requests in a cooperative atmosphere without recourse to the Court. The request may be oral or written and the opposing counsel shall respond in like manner.

(4) In the event no agreement is reached [between the government and the defendant] regarding the additional discovery or inspection, any motion filed shall be *supported by a brief* and shall be filed within fifteen (15) days of the arraignment...."

Order for Pre-trial Discovery and Inspection at ¶¶ 3–4. Fifteen days from the date of arraignment was September 20, 1989. The defendant failed to file a motion with the court until October 25, 1989, some thirty-five days after the allotted time and only nine court days prior to trial. Thus, the defendant's motion for inspection and testing was untimely; furthermore, it was not supported by a brief as required in the pre-trial order. *See supra.* District court judges, because of the very nature of the duties and responsibilities accompanying their position, possess great authority to manage their caseload.

*See, e.g., United States v. Withers,* 972 F.2d 837, 845 n. 9 (7th Cir.1992) (stating that discovery requests must be timely). Based on the record in the instant case, we hold that it was not an abuse of discretion to deny the defendant's discovery motion for failure to follow the guidelines established by the court.

■ The defendant also argues that the trial court's comments during his cross-examination of government experts were prejudicial and revealed the court's bias in favor of the government. Reed's counsel claims that the trial court's comments compounded the error of denying discovery and further inhibited proper cross-examination. The court made the following remark after a lengthy cross-examination by defense counsel: "Well, thank you, Mr. Runge, for the chemistry lesson...." When cross-examining a second forensic chemist, defense counsel asked:

"Q: If you could hold it together for the jury so they could see it, it looks to me like the one is a little lighter in color, but—it looks like the one in 27 is a little lighter than the powder in 23(a). Is that fair? They can see it and draw their own conclusion but hold it that way so they can see it. I can't do that.

"THE COURT: Was that a question or testimony or what?"

Finally, when defense counsel was questioning an expert about the use of plastic evidence bags, the U.S. Attorney offered to provide an unused bag for the witness to look at, the court commented "Either that or we'll have *him* package a sandwich." Despite the innocuous nature of these comments, the defendant cites to *United States v. Pisani,* 773 F.2d 397 (2d Cir.1985), in support of his argument that the trial judge's comments unfairly prejudiced the defense. In *Pisani,* the Second Circuit considered a trial where the judge directed many "unnecessary barbs" at defense counsel.

"With distressing frequency, however, [the judge] made comments in the jury's presence that could better have been avoided, such as needlessly characterizing counsel's questions or statements as 'improper' and 'completely without merit'. He also may

have suggested to the jury a negative perception of defense counsel's competence by directing him to 'stop mumbling', by stating that a particular line of questioning was a 'bore and a waste of time', and by implying several times that counsel was misleading the jury."

*Id.* at 403. Nonetheless, the court upheld the conviction because "[v]iewing the record as a whole, ... we conclude that while some of the trial judge's comments and behavior toward defense counsel were regrettable, they did not convey to the jury an impression of partiality toward the government to such an extent that it became a factor in their deliberations." *Id.* at 404.[4]

In *United States v. Kwiat,* 817 F.2d 440 (7th Cir.1987), *cert. denied, Kehoe v. United States,* 484 U.S. 924, 108 S.Ct. 284, 98 L.Ed.2d 245 (1987), this court reviewed a conviction in which the "district judge showed asperity in front of the jury no more than five times during an extended trial." *Id.* at 447. The court's comments included the following: "I'm not going to conduct a school here. I haven't got the time. Nor does the jury." *Id.* at 448. Despite this and other "gratuitously insulting" comments, defense counsel never objected to the judge's comments nor did he request the opportunity to discuss the matter with the court out of the jury's presence. Instead, defense counsel chose to raise the issue for the first time on appeal. We affirmed the conviction because we will not allow trial counsel "to bypass the most immediate way of dealing with their grievances about the conduct of the trial—requests to the presiding officer." *Id.* Likewise, in the case before us, Reed's defense counsel never objected to the alleged prejudicial comments during trial nor did he request the court to refrain from comments about the length of his cross-examination. Moreover, in light of *Pisani* and *Kwiat* as well as the fact that the judge's conduct did not rise to the level of *Rocha v. Great American Ins. Co.,* 850 F.2d 1095 (6th Cir.1988), we disagree with defense counsel's contention that there was anything prejudicial about the court's comments. Accordingly, we hold that the defendant was not denied his right to due process by the trial court's three comments during defense counsel's cross-examination of the government's expert witnesses.

### 2. Evidentiary Ruling

■■■ Reed argues that the district court erred in refusing more extensive cross-examination regarding Ross' prior criminal history and present drug dealing activities. Reed claims that the court should have permitted additional testimony regarding the specific nature of Ross' 1975 felony conviction for official misconduct.[5] We review the district court's evidentiary ruling for abuse of discretion. *United States v. Briscoe,* 896 F.2d 1476, 1490 (7th Cir.), *cert. denied, Usman v. United States,* 498 U.S. 863, 111 S.Ct. 173, 112 L.Ed.2d 137 (1990). Federal Rule of Evidence 609(b) states:

"Time limit. Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction ... unless the court determines, in the interests of justice, that the probative value of the conviction supported by the specific facts and circumstances substantially outweighs its prejudicial effect."

We would be hard pressed to hold that the trial court abused its discretion in not permitting more details of Ross' felony convic-

---

4. We are well aware that in some cases a trial judge's behavior on the bench deprives a party of a fair trial. *See, e.g., Rocha v. Great American Ins. Co.,* 850 F.2d 1095, 1099–1100 (6th Cir. 1988). In *Rocha,* the trial court's comments and interjections numbered well into the hundreds and included "prejudicial comments and biased interrogation." *Id.* at 1099. The appellate court concluded

"When the remarks of the judge during the course of a trial, or his manner of handling the trial, clearly indicate a hostility to one of the parties, or an unwarranted prejudgment of the

merits of the case, or an alignment on the part of the Court with one of the parties for the purpose of furthering or supporting the contentions of such party, the judge indicates, whether consciously or not, a personal bias and prejudice which renders invalid any resulting judgment in favor of the party so favored." *Id.* at 1100 (citation omitted).

5. Edward Ross was formerly a police officer, and in 1975 was charged with official misconduct for stealing cash from a deceased drug dealer's wallet during an investigation.

tion when the court had the discretion to refuse any evidence whatsoever of the conviction because it occurred more than ten years prior. Additionally, we note that Ross' credibility was not the dispositive factor in the trial. As we have previously stated, the evidence against Reed is more than sufficient even without Ross' testimony. The direct testimony of Agent Harold combined with the taped telephone conversations between Reed and Ross discussing drug transactions, the recorded sale conversations they had in person, and the evidence seized from Reed's office (cocaine and paraphernalia) conclusively establishes Reed's guilt in the charged offenses. This case is analogous to *United States v. Taglia*, 922 F.2d 413 (7th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 2040, 114 L.Ed.2d 125 (1991), in which we denied the defendants' motion for a new trial because "the government's case [did not] rest[ ] entirely on the uncorroborated testimony of a single witness who was discovered after trial to be utterly unworthy of being believed...." *Id.* at 415. As in *Taglia* the government demonstrated "beyond serious doubt that the defendant[ ] committed the crimes of which [he was] convicted." *Id.* at 416. Thus, upon review of the record, we are convinced that the trial court did not abuse its discretion in limiting the defense from going into great detail about a fourteen year-old conviction. Reed also argues that the government violated the Jenck's Act, 18 U.S.C. § 3500; Fed.R.Crim.P. 16; and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), because the prosecution failed to turn over notes and reports that Agent Wood used during his testimony which allegedly revealed that Reed was not the sole source of Ross's cocaine. The defendant and/or his counsel continues to be under the misguided belief that the government had a duty to prove that Reed was Ross' sole source of cocaine. The indictment neither refers to the source of Reed's coke nor refers to a relationship between Reed and Edward Ross. Willie Reed was charged with distribution and possession with intent to distribute cocaine on March 11, 1989 and on April 21, 1989. *See supra*· at 1444 – 45 (listing the elements of the offenses with which Reed was charged). The only relevant questions for the jury were (1) did Willie Reed distribute cocaine on March 11, 1989 and on April 21, 1989?; and (2) did Willie Reed possess cocaine with the intent to distribute the same on April 21, 1989? The jury answered these questions in the affirmative. Whom Reed obtained his cocaine from is of no significance, thus the court did not commit any error.

### 3. Prosecutorial Misconduct

■ Reed, in his final evidentiary objection, alleges that the prosecutor made comments during closing argument that impermissibly prejudiced the defendant by violating his Fifth Amendment rights. Specifically, Reed argues that the prosecutor commented on the defendant's failure to present evidence as to tampering with seals on cocaine exhibits. The prosecutor's comments were as follows:

> "The only thing that we have about integrity of the seals or supposition about problems with the seals is an innuendo, some sort of implication that maybe they were tampered with, but there is no evidence of it, none. No evidence has been brought forward in any manner to support an allegation that any of these drug exhibits have been tainted in any way.
>
> \*    \*    \*    \*    \*    \*
>
> I would submit that based upon the evidence that has been brought forth in this trial, the cocaine exhibits submitted as evidence in this case of integrity, they are as they were when submitted and there is no evidence of tampering, no evidence that they were not what they have testified and what the testimony has been that they are."

Defense counsel objected to the prosecutor's remarks on the grounds that they violated the defendant's Fifth Amendment right not to testify. The district court rejected this argument because he did not "think counsel approached alluding to the defendant's Fifth Amendment right. If he did, of course, I would make it very clear and make it a mistrial. In my view that has not been done."

To succeed in his claim, Reed must demonstrate that "the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986) (citation omitted).

> "When analyzing allegations of prosecutorial misconduct during argument, we look at the disputed remarks in isolation to determine if they are proper. If the statements are proper, our analysis ends. If the statements are improper, our second step is to look at the remarks in light of the entire record to determine if the defendants were deprived of a fair trial."

*United States v. Badger*, 983 F.2d 1443, 1450 (7th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 2391, 124 L.Ed.2d 293 (1993). In *Badger*, we held that five factors must be considered when weighing the propriety of a prosecutor's comment:

> "1) the nature and seriousness of the prosecutorial misconduct, 2) whether the prosecutor's statements were invited by conduct of defense counsel, 3) whether the trial court instructions to the jury were adequate, 4) whether the defense was able to counter the improper argument though rebuttal, and 5) the weight of the evidence against the defendant."

*Id.* While we will not hesitate to take the proper action when a prosecutor violates a defendant's Fifth Amendment right to remain silent, that is not what took place in this case. The prosecutor's comment was in direct response to an argument the defendant made but failed to offer any evidence in support thereof. The defense, probably in desperation, speculated during the course of the trial that the evidence bags may have been tampered with and he also questioned the chain of custody. The defense, however, failed to present one scintilla of evidence in support of either insinuation. Thus the prosecutor's statements were invited by the conduct of defense counsel. *See United States v. Young*, 470 U.S. 1, 12–13, 105 S.Ct. 1038, 1044–45, 84 L.Ed.2d 1 (1985). In his closing statement, it was entirely proper for the prosecutor to answer and rebut the defense's misleading argument. It is not only permissible but advisable in closing argument to refute meritless accusations. Thus, we are in agreement with the trial court that the prosecutor's comments in his closing statement were proper and did not impinge upon the defendant's Fifth Amendment right.[6] Moreover, when considering the prosecutor's comments "in light of the entire record," *Badger*, 983 F.2d at 1450, we are convinced that the defendant received a fair trial. As stated throughout this opinion, the evidence that Reed sold cocaine on March 11th and on April 21st is established beyond doubt in the record.

## C. *Motion for New Trial*

Finally, Reed argues that the trial court erred in denying his motion for a new trial. Reed's motion for a new trial was based upon Ross' lack of credibility, whom Reed alleged was the government's key witness. (Initially let us make clear that Ross was not the *key* witness as there was abundant evidence against Reed). The motion relies on allegedly newly discovered evidence in the form of a letter from Reed to his defense counsel ten months after his sentencing. Reed claims (1) that Ross threatened him and his family if Reed were to testify in the trial, (2) that Ross' testimony is the only evidence against him, (3) that Ross has been selling drugs to the Brooklyn, Illinois Police Department, (4) that Ross admitted to killing a drug dealer and stealing his money in 1975 as a Brooklyn police sergeant, and (5) that Ross lied about

---

**6.** The defendant relies on *Dortch v. O'Leary*, 863 F.2d 1337 (7th Cir.1988), *cert. denied, Dortch v. Cohn*, 490 U.S. 1049, 109 S.Ct. 1961, 104 L.Ed.2d 429 (1989), as support for his argument that the prosecutor's comments violated his Fifth Amendment right to refrain from testifying. In *Dortch*, the prosecutor made repeated references to the defendant's failure to testify, nonetheless, when we analyzed the record under the harmless error standard, we concluded "that the evidence against Dortch was overwhelming and that the alleged constitutional error committed by the prosecutor in closing argument was harmless beyond a reasonable doubt." *Id.* at 1345. In the case before us, we need not engage in harmless error analysis because the prosecutor's comments were proper. *Badger*, 983 F.2d at 1450. The prosecutor did not infer, much less state, that Reed had failed to testify.

Reed being his sole source of cocaine. The district court allowed oral argument to consider whether Reed's November 20, 1990 unsigned letter to his attorney constituted newly discovered evidence, thereafter, the court denied the motion for a new trial because the evidence did not fall within the parameters of newly discovered evidence and it only served to impeach Ross.

■ We have held that "[t]he decision to grant a new trial under Federal Rule of Criminal Procedure 33 is a matter of discretion for the district court and will be disturbed on appeal only if the district court abused that discretion." *United States v. Kuzniar,* 881 F.2d 466, 470 (7th Cir.1989). In *United States v. Van Daal Wyk,* 840 F.2d 494, 500 (7th Cir.1988), we stated a "general" four-part test to determine whether a new trial is warranted. "The defendant must show that the evidence (1) came to [his] knowledge only after trial; (2) could not have been discovered sooner and [he] exercised due diligence; (3) is material, and not merely impeaching or cumulative; and (4) would probably lead to an acquittal in the event of a retrial." *Id.* (quoting *United States v. Nero,* 733 F.2d 1197, 1202 (7th Cir.1984)). In evaluating new trial motions, we have stated that "newly discovered evidence that is merely impeaching is not a permissible ground for a new trial." *Taglia,* 922 F.2d at 415. When determining whether to grant a new trial based on allegedly false testimony we have applied a more stringent test which asks whether

"(a) The court is reasonably well satisfied that the testimony given by a material witness is false.

(b) The jury might have reached a different conclusion absent the false testimony or if it had known that testimony by a material witness was false.

(c) The party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after the trial."

*United States v. Reed,* 986 F.2d 191, 192–93 (7th Cir.1993) (quoting *United States v. Mazzanti,* 925 F.2d 1026, 1029 (7th Cir.1991)). In *Mazzanti,* we declined the government's request that we apply the "general" newly

discovered evidence test even in cases where the new trial motion is premised on allegedly false testimony. *Mazzanti,* 925 F.2d at 1029–1030. Regardless of whether we apply the "general" test or the "false testimony" test, mere speculation or conjecture is insufficient to warrant a new trial. *See United States ex rel. Darcy v. Handy,* 351 U.S. 454, 462, 76 S.Ct. 965, 970, 100 L.Ed. 1331 (1956) (a defendant must demonstrate prejudice "not as a matter of speculation but as a demonstrable reality") (quoting *Adams v. United States ex rel. McCann,* 317 U.S. 269, 281, 63 S.Ct. 236, 242, 87 L.Ed. 268). Reed's motion for a new trial requires us to apply the general test for newly discovered evidence to his allegations attacking Edward Ross' credibility, *see Van Daal Wyk,* 840 F.2d at 500, and the false testimony test to the allegations that Ross misled the jury as to when he first met Reed. *See Reed,* 986 F.2d at 192–93.

■ Initially, we note that the primary allegation is that Ross threatened Reed and his family. Reed clearly had knowledge of this alleged threat prior to trial, *Van Daal Wyk,* 840 F.2d at 500, thus it fails to satisfy the first element of the test for newly discovered evidence. Reed's 1990 letter to his attorney is the only alleged evidence that Ross threatened him. We will not grant a new trial based solely on an uncorroborated self-serving letter. Moreover, because the allegation merely goes to impeaching Ross and is not material to the offense for which Reed was convicted, it does not warrant a new trial. *Id.* This allegation, and the others raised by Reed in his new trial motion appear to be nothing but a buckshot approach challenging any and everything possible with unsubstantiated speculation.

■ Two of Reed's allegations attack the credibility of Ross as a witness (that Ross sold drugs to the Brooklyn, Illinois Police Department and that Ross killed a drug dealer and stole his money in 1975). As we stated above, the only "evidence" Reed offers is a self-serving letter he wrote to his attorney listing reasons why he should receive a new trial. His claims are nothing but unsupported and uncorroborated allegations lacking documentation (police or court records)

or affidavits. Moreover, these allegations fail to justify a new trial because (1) they are not "material" and (2) at best, they go toward impeaching Ross. *Id.* Even if the allegations are true, we are not of the opinion that they "would probably lead to an acquittal" because of the overwhelming evidence of guilt against Reed. *Id.* In his motion for a new trial, Reed once again, for reasons unknown, argues that Ross' testimony is the only evidence against him. As we have stated throughout this opinion, Reed is ignoring the substantial case against him when he claims that Ross' testimony is the only evidence. Even if we disregard Ross' testimony completely, we remain convinced that the evidence against Reed establishes his guilt beyond doubt. Not only does the record include tape-recorded telephone conversations and meetings between Reed and Ross, there is also the eye-witness testimony of DEA Agent Harold who purchased cocaine from Reed and the evidence found in Reed's office (scales, baggies, cocaine and cocaine base as well as other paraphernalia). The record makes clear that Reed's argument that Ross' testimony is the only evidence against him is without merit.

■ We review Reed's final allegation (that Ross deceived the court as to when he first met Reed and about Reed being the sole source of his cocaine) under the "false testimony" test. *Mazzanti*, 925 F.2d at 1029. Reed relies on the testimony of Marva Collins to support his argument that he could not have been Ross' supplier of cocaine in 1987 because Reed and Ross were not introduced until 1988. The discrepancy in Ross' and Collins' testimony as to when Ross met Reed does not merit a new trial because Collins might very well have been mistaken as to when Reed and Ross first met. Moreover, because Reed was convicted of individual narcotics violations, as opposed to a conspiracy, the only relevant conduct before the jury was what occurred on the days in question. Reed was charged with distribution and possession with intent to distribute cocaine on March 11 and April 21, 1989, thus it is irrelevant what occurred before March 11 or when the relationship between Reed and Ross began. What is relevant is that the government proved each and every element

of the crimes charged in the indictment beyond a reasonable doubt. *See supra* at 1444–45. We are unconvinced that the jury might have reached a different conclusion had it known that Ross met Reed for the first time in 1988 rather than 1987.

## IV. CONCLUSION

Each of the defendant's arguments is without merit. The conviction is

AFFIRMED.