The TRAVELERS INSURANCE COMPANY, Appellant,

v.

Ray RYAN, Appellee.

No. 26371.

United States Court of Appeals Fifth Circuit.

Sept. 9, 1969.

Howard Waldrop, Atchley, Russell, Hutchinson & Waldrop, Texarkana, Tex., for appellant.

Jack Carter, Raffaelli, Lee & Hawkins, Sidney Lee, John D. Raffaelli, Texarkana, Tex., for appellee.

Before THORNBERRY and SIMPSON, Circuit Judges, and CASSIBRY, District Judge.

SIMPSON, Circuit Judge:

What are the permissible boundaries of fair judicial comment to the jury?

This recurring problem controls our review of this Texas Workmen's Compensation Act Case. We determine that the trial judge, activated no doubt by the laudable motive of helping the jury reach what he considered the right verdict, markedly exceeded these limits by his comments. The result we view as a coerced verdict, requiring reversal.

The basic principle involved is clear; its application to individual cases is sometimes beclouded. 53 American Jurisprudence, Trials, Sec. 76, page 75, states it thus:

> "In jury trials the trial judge should be cautious and circumspect in his language and conduct before the jury. He must be fair to both sides, and the extent to which he may go in comments and remarks during the trial is governed by the fundamental principle that *nothing should be said or done by him which will prejudice* the *rights of the parties litigant*. Especially should he refrain from any remarks that are calculated in any way to influence the minds of the jury or to prejudice a litigant." (Emphasis supplied.)

In Starr v. United States, 1894, 153 U.S. 614, 14 S.Ct. 919, 38 L.Ed. 841, it is put:

> "It is obvious that under any system of jury trials the influence of the trial judge on the jury is necessarily and properly of great weight, and that his lightest word or intimation is received with great deference, and may prove controlling." 153 U.S. at p. 626, 14 S.Ct. at p. 923.

See further: United States v. Lanham, 5 Cir. 1969, 416 F.2d 1140, [Sept. 5, 1969]; Bollenbach v. United States, 1946, 326 U.S. 607, 612, 66 S.Ct. 402, 405,

90 L.Ed. 350, 354; Nunley v. Pettaway Oil Co., 6 Cir. 1965, 346 F.2d 95; Wabisky v. D. C. Transit System, Inc., 1963, 117 U.S.App.D.C. 115, 326 F.2d 658; Myers v. George, 8 Cir. 1959, 271 F.2d 168; Comer v. Smith's Transfer Corp., 4 Cir. 1954, 212 F.2d 42; United States v. Link, 3 Cir. 1953, 202 F.2d 592. But cf. Doyle v. Union Pac. R.R. Co., 1893, 147 U.S. 413, 13 S.Ct. 333, 37 L.Ed. 223; United States v. Philadelphia and Reading R. R. Co., 1887, 123 U.S. 113, 8 S.Ct. 77, 31 L.Ed. 138; Kesley v. United States, 5 Cir. 1931, 47 F.2d 453.

■ It is precisely *because* of the important functions assigned to a trial judge, especially in a federal trial where these functions include the right to comment upon evidentiary matters, that the judge's duty must be performed with strict neutrality and utmost impartiality. By reason of his role, quickly observed by jurors, the judge is a figure of overpowering influence, whose every change in facial expression is noted, and whose every word is received attentively and acted upon with alacrity and without question.

The instant case affords a clear illustration of the force of these observations. What we are saying is in no sense novel or original. The wine we pour is from old bottles indeed. We deal with maxims of the law, with truisms distilled in countless cases by unnumbered judicial forbears long since dust. But the principle is of continuing validity and vitality.

■ One further preliminary observation is in order. There is a difference between comment by the trial judge upon evidentiary matters, which if fair and unbiased is permissible, on the one hand, and comment by the judge upon the ultimate factual issues to be decided, on the other hand. The latter is not permitted. For instance, in a recent Sixth Circuit case, Nunley v. Pettaway Oil Co., supra, one of the special issues submitted was whether the plaintiff below, Nunley, was an invitee or a licensee on the Oil Company premises. When the jury indicated that they could not agree on this issue; the trial judge told them that while his view was advisory only, and not binding on the jury, he considered the evidence to show that Nunley was an invitee. This became the ultimate jury finding. The Sixth Circuit reversed:

"We recognize that the right of a District Judge to comment on the evidence is firmly established. See Quercia v. United States, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321 (1933), and the cases recited therein. We do not seek narrowly to confine this right when it is used to inform the jury as to problems which they must consider.

"We also recognize that the District Judge was motivated by a laudable desire to prevent a mistrial and that he clearly told the jury that it had the ultimate right to decide the issue concerned.

"Nevertheless, we believe that under the circumstances enumerated, the trial judge's opinion on the licensee-invitee issue was an *opinion on an ultimate fact question peculiarly for jury consideration and amounted to an instructed verdict* as to defendant Pettaway Oil Company. * * *

"We believe the trial judge's comment on the licensee-invitee issue went beyond the limits of judicial comment and *invaded the ultimate fact-finding function of the jury*." Nunley v. Pettaway Oil Co., supra, 346 F.2d at page 99. (Emphasis added.)

As we develop below, the trial judge in our case gave the jury his views upon ultimate issues of fact, those of total versus partial and permanent versus temporary disability. This was an invasion of the ultimate fact-finding function of the jury, prejudicial to the rights of the appellant.

In the instant case the questioned conduct came when the jury attempted to return its verdict. The incident will be recounted in some detail largely by quotation from the record so as to present

the matter in context. As is usual in Texas trials, state or federal, the case had been submitted upon special interrogatories.[1] After about fifty minutes of deliberation (4:25 P.M. to 5:15 P.M.) the jury returned to the courtroom and the foreman announced that they had reached a verdict. The verdict as read by the Clerk and the proceedings which then ensued are quoted in the margin.[2]

1. The interrogatories were as follows:

INTERROGATORY NO. 1:

Do you find that Ray Ryan sustained any total disability following the injury of November 29, 1965?

ANSWER: ——————— ("Yes" or "No")

Do you find that such accidental injury was a producing cause of the resulting disability, if any, sustained by Ray Ryan?

ANSWER: ——————— ("Yes" or "No")

Find a beginning date, if any, of such total disability.

ANSWER: ——————— (give month, day and year)

Do you find that such total disability, if any, has been or will be permanent or has been or will be temporary?

ANSWER: ——————— ("Permanent" or "Temporary")

If you have answered the preceding interrogatory "Permanent", you will not answer the following; but if you have answered the preceding interrogatory "Temporary", then you will answer the following:

Find the duration, if any, of such disability, if any.

ANSWER: ——————— (Answer by giving the number of weeks or "None")

INTERROGATORY NO. 2:

Do you find that Ray Ryan has sustained or will sustain any partial disability following the injury of November 29, 1965?

ANSWER: ——————— ("Yes" or "No")

If you have answered interrogatory No. 2 "No", you will not answer the following interrogatories.

But if you have answered interrogatory No. 2 "Yes", then you will answer the following interrogatories:

Do you find that the injury was a producing cause of such partial disability, if any?

ANSWER: ——————— ("Yes" or "No")

Find the beginning date, if any, of such partial disability, if any.

ANSWER: ——————— (give month, day and year)

Find the duration, if any, of such partial disability, if any.

ANSWER: ——————— (Answer "Permanent" or by giving number of weeks or "None")

Find the percentage of such partial disability, if any.

ANSWER: ——————— (Answer by giving the percentage).

The jury had been instructed, among other matters as to the meanings of "injury," "accidental", "total disability", and "partial disability". They had been told also that a person cannot be, in law, totally and permanently disabled and also partially disabled at the same time, and further that if a person is totally and permanently disabled to labor, he cannot be partially disabled to any extent for any period of time.

"Total disability" was defined for the jury by the judge as follows: "By the term 'total disability' as used in this charge does not mean an absolute disability to perform any labor, but a person disqualified from performing the usual tasks of a workman in such a way as to enable him to procure and obtain employment is totally disabled."

2. THE COURT: Mr. Cooney, you may read the answers to the special interrogatories.

CLERK OF THE COURT: The answer to Interrogatory No. 1—The answer is "Yes";

The second answer under No. 1 is "Yes";

The third one is "November 29, 1965";

The first answer on the next page is "Temporary";

The next answer is "54 weeks";

Interrogatory No. 2—The answer is "Yes";

Second question—The answer is "Yes";

The jury then went out for about one half hour [3] before returning with a verdict which differed in substantial and crucial particulars from the one first returned. This was the verdict [4] recorded and the one upon which the judgment ap-

On the next page—"December 13, 1966"; The next answer is "Permanent"; and The next answer is "75 percent".

It's signed "Sam W. Austin" as Foreman. It is dated 3–13–68.

THE COURT: Let me see the verdict, please.

REPORTER'S NOTE: Instrument was then handed to the Court.

(Pause)

THE COURT: Gentlemen of the Jury, the Court will have to accept the verdict, but I have to be fair with you and say that it's—it's not fair to the Plaintiff. It's—Well, it's hard to understand how these things—How these things happen. I feel that this is a conscientious man. If there ever was a verdict that should reflect encouragement and credit to good faith it would be in this instance.

However, this is your verdict and we'll have to abide by it—and if this is the verdict of each and everyone of you and it's the verdict you want to render, then the Court will accept it.

THE FOREMAN: Your Honor—

THE COURT: All right; yes sir.

A JUROR: We were—We were disturbed on—

THE COURT: (Interrupting) You'll have to tell me what he said.

THE FOREMAN: The question about permanent—

CLERK OF THE COURT: (Interrupting) Speak up louder, please.

THE FOREMAN: I say, we were disturbed as to—I should have gotten your —your judgment on that—about the permanent angle, you know. So, we first figured out permanently, and then argued around and argued around, and then said it was—

THE COURT: (Interrupting) What— What was the reason the jury did not find permanent disability to the—to the total?

THE FOREMAN: Well, they argued that it could not be permanent since he had gone back to work.

THE COURT: Yes, but the test that the Court gave you was whether or not the disability was such as to whether he could obtain or procure employment—and retain it.

Do you think that if he got fired off of this job anybody else would hire him?

THE FOREMAN: I don't think so. That was my argument.

THE COURT: Well, that's—that's— that's really the test.

I want to accept whatever verdict you want to render here, but I want you to— A JUROR: (Interrupting) We didn't fully understand—

THE FOREMAN: (Interrupting) We didn't fully understand. Where we made our mistake was in not coming in and asking you.

A JUROR: We did not ask you—

THE FOREMAN: (Interrupting) Through our ignorance, we didn't come in and ask you. You see, we had permanent—

THE COURT: (Interrupting) I think that's right. You want a definition of total disability?

A JUROR: What—What—

THE FOREMAN: (Interrupting) That's it: has been—will be. That's—

THE COURT: (Interrupting) I'm going to give you this written definition and let you take it with you.

THE FOREMAN: Would you let us retire?

THE COURT: I'm going to let you take it back to the jury room and let you read it; and if you want to reconsider, why, you may; if you do not, why, you render what verdict you want to render, because that's your business—and the Court does not want to coerce you in that.

THE FOREMAN: We appreciate that —if we can.

THE COURT: Would that be your wish? Would that be your wish?

REPORTER'S NOTE: Several of the jurors replied in the affirmative.

THE COURT: All right, you will be retired to the jury room and the Court will send a definition to you.

THE FOREMAN: Thank you, sir.

REPORTER'S NOTE: The jury withdrew for further deliberation at 5:20 o'clock, P.M., March 13, 1968.

3. The transcript shows they left the courtroom at 5:20 P.M. and returned at 5:55 P.M., an elapsed time of 35 minutes. It is difficult to envisage the proceedings set forth at Footnote 2 as requiring only five minutes.

4. We quote from the record:

THE COURT: You may read the verdict.

CLERK OF THE COURT: The answer to Interrogatory No. 1—The first answer is "Yes";

pealed from was entered. Appellant's Counsel, after the jury was discharged was given an opportunity to object by the Court. He objected to the "remarks of the Court to the jury which transpired at approximately 5:15 P.M., on the date of trial, which was the first time that the jury returned a verdict and it had been read in open court; and objects to all such remarks made by the Court subsequent to the reading of the verdict in open court, and the sending of the jury back for further consideration."

Seven of the eight points raised on appeal attack these post-first verdict pre-second verdict proceedings in varying language. We group the seven points together for discussion.

■ The eighth point involves the appellant's objection to the Court's instruction and interrogatory as to *"percentage"* of partial disability (see last question, Interrogatory No. 2, Footnote 1, supra.) Appellant asserts that this interrogatory under Texas law was required to be stated in terms of *loss of wage-earning capacity*, not in terms of *percentage of disability*. We agree that this is correct, and direct that upon remand and retrial, the district court shall state this question in terms of loss of wage-earning capacity, which is the fac-

tor for which compensation is provided. See Article 8306, Section 11, Vernon's Annotated Texas Civil Statutes, as amended, 1957; Texas Emp. Ins. Ass'n. v. Vineyard, Tex.Civ.App.1960, writ ref. n. r. e., 340 S.W.2d 106.

We proceed to the basic question confronting us. First and foremost, this was not a case where the trial judge was called upon by the jury to clarify prior instructions during the course of their deliberations. The Jury's verdict was received. Absent the judge's intervention it would have been recorded. The jury asked no questions. It did not indicate doubt as to the meaning of total disability until *after* the trial judge's (Footnote 2) expressed reaction to and dissatisfaction with the verdict: "The court will have to accept the verdict, but I have to be fair with you and say that it's—*it's not fair to the plaintiff*. It's—well, it's hard to understand how these things—how these things happen. *I feel that this is a conscientious man.* If there ever was a verdict that should reflect· encouragement and credit to good faith [5] it would be in this instance." (Emphasis supplied.)

In the face of this character reference for the plaintiff from the dominant figure in the courtroom, a United States

The answer to the second question is "Yes";

The answer to the third question is "November 29, 1965"

The answer to the first question on the next page is ."Permanent";

Interrogatory No. 2—The answer to the first question is "No"—

And it's signed "Sam W. Austin, Foreman"—dated 3–13–68.

THE COURT: Mr. Austin, and Members of the Jury, is this the verdict of each and everyone of you?

THE FOREMAN: It is, sir.

THE COURT: If for any reason it is not, now is the time to so indicate—and let the Court assure you and we do not want to· coerce any verdict that this jury might reach. I said what I did because I had a feeling that the jury did not understand the instructions, and that's the reason I gave you an opportunity to go back, and to reconsider, and to reflect the true verdict that you wished to render.

But, as I said before, I want to accept the verdict that you want to render; not one that the Court wants to render—and if, for any reason, this does not reflect your true verdict, why then, please let it be known by raising your hand.

THE FOREMAN: This is a true verdict.

THE COURT: Raise your hand if it does not.

REPORTER'S NOTE: There was no response from the jury or any of its members.

THE COURT: All right, Members of the Jury, the Court wishes to express appreciation to each of you. I feel that you have rendered a very worth-while service as jurors, and we are grateful to you for your services rendered.

5. An apparent reference to the fact developed by the evidence that despite his injuries, the plaintiff was working at the time of trial.

District Judge, it should not come as a surprise that the jury foreman and his (by then) uneasy fellow jurors looked for an avenue to appeasement when the trial judge suggested it by his next statement: "However, this is your verdict and we'll have to abide by it— and if this is the verdict of each and everyone of you and it's the verdict you want to render, then the court will accept it."

It was only at this point that the foreman indicated the existence of uncertainty "—about the permanent angle, you know. So, we first figured out permanently, and then argued around and around, and then said it was—"

What would have followed was cut off by the Court's next question:

THE COURT: (Interrupting) "What —*What was the reason* the jury did not find permanent disability to the —to the total?"

which was of course grossly invasive of the jury's deliberations. The foreman replied: "Well, they argued that it could not be permanent since he had gone back to work."

The Court replied with argument for the plaintiff that it would be difficult for plaintiff's own counsel to improve upon.

"Yes, but the test that the Court gave you was whether or not the disability was such as to whether he could obtain or procure employment and retain it.

*Do you think that if he got fired off of this job anbody else would hire him?*"

The discussion continued as set out in Footnote 2 with the judge finally, without any request for it, furnishing a written definition of "total disability"[6] for the jurors to take back to the jury room with them.

The revised verdict awarded, not surprisingly, permanent and total disability.

In these circumstances, the admonition to "render what verdict you want to render, because that's your business— and the court does not want to coerce you in that." had a hollow ring. It was completely ineffective. Of course the trial judge's statements after the second verdict was returned, quoted in Footnote 4, supra, with respect to not wanting to coerce any verdict, affected nothing that had gone before.

 We do not believe that the verdict upon which the judgment appealed from was entered represented the views of an impartial jury. The appellant was entitled to no less. The comments of the trial judge were outside the permissible scope of fair judicial comment. They invaded the fact-finding function of the jury and had the effect of coercing a verdict. Finally the giving of the additional written instruction without a request therefor, while perhaps not prejudicial error standing alone, was improper and served to compound the error.

For the reasons indicated the judgment is

Reversed.

---

6. For some unexplained reason, not reproduced in this record, and apparently never shown to counsel. All concerned seem to assume that it was identical with the definition in the earlier oral charge, embodied in Footnote 1, supra.