JOURNAL ENTRY AND OPINION
{¶ 1} Defendant appeals his convictions by a jury for possession of drugs in violation of R.C. 2925.11, preparation of drugs for sale in violation of R.C. 2925.07, and violation of R.C. 2923.24, possession of criminal tools. For the reasons that follow, we affirm in part and reverse in part the judgment of the trial court.
 {¶ 2} After pleading not guilty to a three-count indictment, defendant, through counsel, moved to suppress drugs found on him by police on December 12, 2000. At a suppression hearing the following evidence was presented.
 {¶ 3} On the night of December 12th, defendant was stopped by Detective Luther Roddy of the Cleveland Police Department. Roddy testified he initially stopped defendant because he had driven through an inoperable traffic light at the intersection of East 141st and Harvard in Cleveland, Ohio. After stopping defendant, Roddy approached the driver's side of the vehicle. When defendant rolled down his window, Roddy immediately smelled and observed marijuana smoke emanating from inside the vehicle. Roddy concluded and defendant admitted he was smoking marijuana while driving. Defendant was asked to exit the vehicle, at which point Roddy patted him down and felt bulges in his pockets. Police found crack cocaine, a cell phone, and a pager in his pockets. Lab results revealed that the contents of defendant's pockets contained a little more than 25 grams of cocaine and .92 grams of marijuana.
 {¶ 4} At the end of the suppression hearing held on February 14, 2002, defendant argued the initial stop was invalid because police erroneously cited defendant for failing to stop at a stop sign not a traffic light. After denying defendant's motion to suppress, the trial court and defense counsel engaged in a heated exchange in which the following comments were made:
 THE COURT: The motion to suppress will be denied. Any other motions?
 MR. MANCINO: The other motion outstanding is a motion for an independent analysis of the controlled substance. And we need that for two reasons: one, to weigh it; and two, to see exactly what it is.
THE COURT: I told Cynthia that was granted.
 MR. MANCINO: Well, she never told me and I didn't see any order on it.
 THE COURT: Well, I didn't cut an order, but when she filed it, I told her it was granted.
 MR. MANCINO: She was unaware of it. He was unaware of it. We need a court order to do it.
THE COURT: All right. It's granted.
MR. MANCINO: So we need some time to do it then.
 THE COURT: Why? You've had time. The case has been pending forever.
 MR. MANCINO: We cannot get anybody to do it without a court order.
 THE COURT: You were supposed to bring the motion to the Court's attention 14 days before trial. You have been around here forever. You have been coming around and everything. You have never said to me that this motion was outstanding, that you needed me to rule on it so you could get it analyzed while we were waiting for you to come in for trial.
 MR. MANCINO: On December 18, 2001, when we were here, we brought up both motions.
THE COURT: Not to me you didn't.
MR. MANCINO: Yes, we did. We were in the courtroom here.
 THE COURT: You never said to me that you needed me to rule on this motion.
MR. MANCINO: Yes, we did.
THE COURT: No, you didn't.
MR. MANCINO: Get the record. We'll show it to you.
 THE COURT: I'm not getting anything. If you want it, you get it.
 MR. MANCINO: We did. We were here, and the case was continued.
 THE COURT: No, you didn't, because I have no problems with granting this motion. So now it's granted. And if you need me to cut something, I will, but the trial is going to go on.
MR. MANCINO: We can't. We need that information.
 THE COURT: Well, you've had sufficient time to have that done. The posture of this Court has been that those will always be granted.
 If you brought it up to me before, then what was my ruling before?
 MR. MANCINO: You didn't pay any attention to me last time when we were in court.
THE COURT: So you made a motion and I ignored you?
 MR. MANCINO: Yes. We brought it to your attention that that was outstanding, along with a motion to suppress, and needed an amended motion to suppress.
 THE COURT: You know what? There has never, ever been a motion filed for an analysis, for help, for assistance, for an appointment of a specialist or anything else that I denied. I automatically grant them. Always. So there's no possibility I would have ignored you.
MR. MANCINO: I looked through the documents.
 THE COURT: You find the transcript where you brought it up to me and I said I wasn't going to grant it, Mr. Mancino. Since you've taken this Court on and said that this Court ignored you, you get the transcript and you provide it for me.
MR. MANCINO: Well, I'm sorry the court feels that way.
THE COURT: You're sitting here calling me a liar.
MR. MANCINO: I am not calling you a liar.
 THE COURT: I'm telling you that I always grant these motions.
MR. MANCINO: Well, we were here.
 THE COURT: If you had asked me for some professional — for an expert, anything, I would have granted it.
MR. MANCINO: We were here on December 19th.
 THE COURT: I don't care when you were here. You never said that to me or I would have granted it.
 MR. MANCINO: Well, if you feel I'm calling you a liar, either you should step down or I should step down from the case.
 THE COURT: Or you're just making it up. But I'm saying that to you and I'm not saying it to you behind your back. I'm saying it to your face.
 MR. MANCINO: I always speak in person. Either I should get off the case or you should get off the case.
THE COURT: Well, it's my case, so you make up your mind.
 MR. MANCINO: Well, what are we going to do with this motion?
THE COURT: It's granted.
 MR. MANCINO: Well, we need some time to have somebody come over and do it.
 THE COURT: That's your business, how you go about it. It's your motion.
Any other motions?
 We'll get you a judgment entry saying it's granted. We'll get you a panel up.
(Recess taken)
 THE BAILIFF: Judge, we're back on the record with Christopher Ward.
THE COURT: Mr. Prosecutor, where are we?
 MR. KOLASINSKI: Your Honor, within the last half-hour, we had a suppression hearing and you denied the motion to suppress.
 A discussion was had between you and defense counsel, Mr. Mancino, with respect to a motion for independent analysis which the Court said you [sic] granted even when Cynthia Smith was the attorney and then a discussion was had by you and Mr. Mancino.
THE COURT: Mr. Mancino.
 MR. MANCINO: Two items. Number one, we did contact a person to do an analysis. They need five days to complete an analysis; and number two, I believe it's best that I withdraw from the case.
THE COURT: That will be granted. You can withdraw.
* * *.
Tr. 28-34.
 {¶ 1} Mr. Mancino withdrew from the case. Defendant was told to secure new counsel for his trial on March 4, 2001.
 {¶ 2} On March 4th, attorney Agopian appeared in court on behalf of defendant but expressed reservation about officially representing him. Just before voir dire, the following exchange occurred.
 THE COURT: Court will take this opportunity to read to you its rules a [sic] voir dire. * * *.
 MR. AGOPIAN: Excuse me. I haven't officially signed on here. He is asking for the right to speak to the court. Is that what you want to do?
MR. WARD: Yes.
THE COURT: Yes?
 MR. WARD: At this time I can't make a decision if I want to go to trial or if I want to make a plea in this case.
 THE COURT: You have got to make a decision now because we are up. It's your turn.
MR. WARD: I need —
 THE COURT: We have been fooling with your case since last April. We have given you lawyer, after lawyer, after lawyer, after lawyer. We have complied with all of the requirements that you, the requests that you have made of this court. You have bent this court's back over.
 Now, there is no more. There has been five lawyers appointed to you. You already retained one lawyer who resigned. You have motioned us to death. You have done everything and we have complied with each one of your requests. No more. Today you are up. You are on. You decide. We're going today, come hell or high water. You are on. This is it. So either you make your decision or you don't. But we got a panel back there right now waiting to resolve your issue. And it's going to be resolved. This is March. This case has been pending. We have been dealing with you since April of last year. It's March already. Enough.
 MR. WARD: Your honor, I had three attorneys, neither one of them attorneys provided —
 THE COURT: Mr. Ward, I am not going to have another discussion with you about it. Every time you have come in here and made your request I have listened to you and every time I appointed somebody else. I am not going to even discuss it with you anymore. If you don't like it, lump it. It's too bad.
MR. WARD: I don't know Mr. Agopian right here.
THE COURT: You have had him before.
MR. WARD: I never had him. I can't understand.
 THE COURT: You have James Shannon, Darrell Dennie, Cynthia Smith, Paul Mancino and now Richard Agopian. That's five people.
MR. WARD: I never had Darrell Dennie.
 THE COURT: I don't even want to discuss it with you. I don't care what you think.
MR. Ward: Your honor, I am not waiving this counsel here.
THE COURT: Fine. Let's go. We got a panel. Bring them in.
MR. WARD: Not waiving.
 THE COURT: I am not asking to you waive anything. I don't want you to waive.
MR. WARD: Can I get me counsel, your Honor?
 THE COURT: You have counsel. You sit yourself right down. We are going to bring in the panel right now and we are going.
MR. AGOPIAN: I don't want to have a jury trial.
 THE COURT: I am not trying the case. So the only way we can proceed is with a jury. Bring the panel in. Sit yourself down. We're going.
MR. WARD: I can't proceed with this attorney.
 MR. AGOPIAN: That's okay. This attorney is not going to represent you.
MR. WARD: Can I get a chance to seek me new counsel?
 THE COURT: Fine. You can represent yourself. You have had time. We have been dealing with you since April. Now, if you don't want this lawyer to represent you or help you out, that's fine with me.
MR. WARD: I don't.
THE COURT: But no matter what we're going.
MR. WARD: Mr. Mancino withdrew from my case.
 THE COURT: That's between you and him. I told you to get yourself a lawyer and you didn't do it. There is no more.
 MR. WARD: He told me to hold on. That's what I was waiting on.
THE COURT: No more.
 MR. WARD: He mislead me to believe that he was coming back.
 THE COURT: Everybody mislead you. I know. Sit down. We're going. Bring in the panel. You are representing yourself. You ain't playing no more games.
 MR. WARD: I am not playing any games. I want fair representation, your Honor.
THE COURT: You have had more than fair representation.
 MR. WARD: I had three attorneys neither one of them represented me properly.
 THE COURT: I understand. You can do it yourself, get the job done.
 MR. WARD: I can't do it myself, you Honor. I wish to have new counsel, please. I ask, please.
THE COURT: Nobody gets five lawyers.
MR. WARD: I only had three.
THE COURT: You have had five.
MR. WARD: I never had five.
THE COURT: Yes, you have.
MR. WARD: I never have five.
 THE COURT: James Shannon, Darryl Dennie, Cynthia Smith, Paul Mancino, Richard Agopian. You didn't want them all. None of them did the job. We asked him to help you out and to represent you. And you don't want —
 MR. WARD: Darryl Dennie wasn't even my attorney either. He never even consulted with me.
 THE COURT: I understand. I just talked to him on the phone. He said he would come and look. That was it.
 THE COURT: I understand. You are going in good stead. You can do it yourself.
MR. WARD: I can't do it myself, your Honor.
THE COURT: Well, it's too bad.
 MR. WARD: Could I please get at least one week to get counsel?
THE COURT: We have been on you since April of last year.
MR. WARD: Nobody has represented me.
 THE COURT: Since April of last year you had an opportunity to get a lawyer in here and proceed with your case. That's nonsense.
MR. WARD: No one has represented me properly, your Honor.
THE COURT: I understand that.
 MR. WARD: Mr. Mancino just withdrew without even letting me know why he withdrew. I haven't seen Mr. Mancino. I don't know why he withdrew from my case. Why would the court, why he withdraw from me. My family retained Mr. Mancino. I should have been able to get some money back from him or something even to make an attempt to get a new attorney. I shouldn't have to be forced to get a court appointed —
THE COURT: I am no longer interested.
 MR. WARD: Oh, my God. I can't proceed on the trial on my own.
 THE COURT: That's your right. And the court is not going to deny your right, but we have been waiting on you since last April. That's more than fair.
MR. WARD: I had three bad attorneys.
 THE COURT: You have not done anything but play games with this court. It has been a continuing scenario with you.
MR. WARD: I am not playing games with the court.
 ". . . THE COURT: I know you are not. We are going to end it right now.
Tr. 37-45.
 {¶ 1} Defendant proceeded to trial without an attorney. Throughout the trial he made repeated requests for an attorney and continually stated he did not understand what he was supposed to be doing to represent himself. Defendant was not offered nor did he sign a written waiver of counsel. Defendant was convicted on all three counts charged in his indictment. In this appeal, defendant presents the following assignments of error.
 I. Defendant Was Denied Due Process Of Law And His Right To Counsel When The Court Required Defendant To Stand Trial Without Counsel.
 II. Defendant Was Denied Due Process Of Law When The Court Would Not Permit A Waiver Of A Jury Trial.
 III. Defendant Was Denied Due Process Of Law When He Was Handcuffed In The Presence Of The Jury.
 {¶ 2} Because defendant did not formally object to the judge's improper conduct, we review the record under a plain error standard. Under Crim.R. 52(B), to find plain error, three elements must be shown: (1) there must be an error, namely a deviation from a legal rule, (2) the error must be plain, which means that it must be an "obvious" defect in the trial proceedings, and (3) the error must have affected "substantial rights," that is, the trial court's error must have affected the outcome of the trial. On appeal, the decision to correct a plain error is discretionary and should be made only to prevent a manifest miscarriage of justice. State v. Barnes (2002), 94 Ohio St.3d 21, 26, 759 N.E.2d 1240.
 {¶ 3} In the case at bar, defendant claims he was denied his constitutional right to due process because he did not waive trial counsel but was forced to represent himself at trial. We agree.
 {¶ 4} Crim.R. 44 provides in pertinent part:
 Where a defendant charged with a serious offense is unable to obtain counsel, counsel shall be assigned to represent him at every stage of the proceedings from his initial appearance before a court through appeal as of right, unless the defendant, after being fully advised of his right to assigned counsel, knowingly, intelligently, and voluntarily waives his right to counsel.
* * *
 (C) Waiver of counsel. Waiver of counsel shall be in open court and the advice and waiver shall be recorded as provided in Rule 22. In addition, in serious offense cases the waiver shall be in writing.
 {¶ 1} As recently noted by this court in State v. Buckwald, 2002-Ohio-2721:
 It is axiomatic that a criminal defendant has a right to counsel pursuant to the Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution. Moreover, the Sixth Amendment * * * guarantees that a defendant * * * has an independent constitutional right to self-representation. State v. Gibson (1976), 45 Ohio St.2d 366, 74 Ohio Op.2d 525, 345 N.E.2d 399, paragraph one of the syllabus, citing Faretta v. California (1975), 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562.
 In order to obtain a valid waiver of a defendant's right to counsel, however, "it is necessary that the trial court make sufficient inquiry to determine whether defendant fully understands and intelligently relinquishes that right. * * * Before concluding there has been a waiver, the court must be satisfied that the defendant made an intelligent and voluntary waiver with the knowledge that he will have to represent himself and that there are dangers in self-representation."
State v. Ebersole (1995), 107 Ohio App.3d 288, 293, 668 N.E.2d 934.
 {¶ 2} "To be valid such waiver must be made with an apprehension of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter." Buckwald, supra, ¶¶ 25-28;State v. Richards, (Sept. 20, 2001), Cuyahoga App. No. 78457.
 {¶ 3} A trial court's inquiry "imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand." Buckwald, supra.
 {¶ 4} In this appeal, the trial court forced defendant to represent himself at trial without ever explaining anything to him about the dangers of proceeding to trial without counsel. There is nothing in the record showing even the slightest attempt by the court to explain to defendant the nature of the charges against him, possible defenses, or even the fact that he could call witnesses and submit evidence in order to present a defense. Under these circumstances it is obvious defendant did not waive trial counsel.
 {¶ 5} What is even more troublesome is that the court intentionally ignored defendant's repeated requests for an attorney and his continual declarations that he did not understand what he was supposed to do at trial. However, there are still other reasons to vacate defendant's convictions. The record also shows the trial court improperly participated in the trial by arguing in front of the jury with defendant, interrupting or ignoring questions asked by defendant, admonishing defendant because he did not understand how to represent himself or what to do with exhibits used by the state, and forcing him to remain handcuffed in front of the jury during trial. All these instances constitute the court's implicit comment on defendant's credibility in the case. Such interjection invades the province of the jury and constitutes plain error and clear prejudice to defendant.
 {¶ 6} "Courts have long recognized that while trial judges have wide discretion to comment upon the evidence presented during a trial and to bring certain facts deemed important to the jury's attention, such activities must be performed with `strict neutrality and utmost impartiality.' * * * By reason of [her] role, quickly observed by jurors, the judge is a figure of over-powering influence, whose every change in facial expression is noted, and whose every word is received attentively and acted upon with alacrity and without question." Rocha v.Great American Ins. Co. (6th Cir. 1988), 850 F.2d 1095, 1099, quotingTravelers Insurance Co. v. Ryan (5th Cir. 1969), 416 F.2d 362, 364.
 {¶ 7} As noted in City of Maumee v. Nycz (February 11, 1994), Lucas App. No. L-92-178:
 The trial court is given the duty to control criminal trial proceedings in order to insure that the truth of the matters asserted is obtained in the most expeditious and effective manner. R.C. 2945.03. * * * However, the judge must be careful, in a criminal trial especially, to insure that the judge's comments or participation does not result in prejudice to one of the parties. * * * The reversal of a conviction is justified if the defendant can show that a judge's comments or participation in a trial might have influenced a jury on issues of credibility or the weight to be given the evidence or interfered with defense counsel's ability to adequately represent his client. * * * The judge's actions must be viewed in light of the total circumstances of the case.
City of Maumee, supra quoting State v. Wade (1978), 53 Ohio St.2d 182,187-188.
 {¶ 1} In the case at bar, the first instance of judicial error occurred during voir dire when a prospective juror expressed concern about his ability to be fair and impartial. When the court asked the juror what his hesitation was based upon, the juror responded, "[t]he fact that he is representing himself." Tr. 71. After some questionable probing by the court, the juror was excused. Immediately afterwards, the court asked the rest of the prospective panel whether "anyone on this panel * * * believes that the government should not hold jury trials? Anybody believe in the violent overthrow of the government? I take it by your silence that you do not. Anybody believes that either the Federal government, the State government or municipal government has no business engaging in decision making in terms of jury trials. Anybody like that?" Tr. 80.
 {¶ 2} By her comments, the judge implied a request to be recused from a jury was unpatriotic. We conclude the court intimidated the rest of the jury members into remaining silent even if they had reservations about the nature of the case or that defendant was without an attorney.
 {¶ 3} Second, after the state was allowed to pose questions to the prospective jurors, the defendant was asked whether he wanted to ask any questions. The court, however, never explained anything to defendant about how to conduct voir dire. Then during the "for cause" phase of voir dire, even though defendant stated he did not understand the concept of "pass for cause" and that he wanted an attorney, the court ignored his comments and told the state to exercise its cause and peremptory challenges. Tr. 122-129. Not surprisingly, defendant declined to pose any questions or exercise any challenges to the jury panel.
 {¶ 4} Following the prosecutor's opening statement, the court asked defendant whether he wanted to make an opening statement. Even though the court explained some generalities about opening statements, defendant stated more than six separate times that he did not understand what he was supposed to do and that he wanted an attorney. To each of defendant's requests for a lawyer, the judge, in open court, admonished him for not having selected an attorney before trial started and that he had already been appointed several attorneys, all of whom he refused. Tr. 144-154. At no time did the court ever tell defendant what could happen to him if he proceeded to trial without an attorney. Defendant did not make an opening statement.
 {¶ 5} Even a defendant's attempts to delay the proceedings do not relieve the trial court of its responsibility to engage in the type of inquiry explained in Crim.R. 44. "Such an inquiry must be made, even when the defendant is seemingly engaged in delay tactics, because such a delaying strategy by the defendant is often employed where the defendant does not understand the crucial role of counsel in criminal cases. * * * If the defendant then continues with his `cat and mouse' game with the court, the court may properly proceed with trial with the knowledge that the defendant knows the gravity of his decision to proceed pro se." Statev. Ebersole (1995), 107 Ohio App.3d 288, 294, 688 N.E.2d 934, citingState v. Weiss (1993), 92 Ohio App.3d 681, 685, 637 N.E.2d 47. Moreover, before a defendant can be forced to go to trial without counsel, he must be "informed of the consequences of actions frustrating the judicial process." Ebersole, supra at 295 citing U.S. v. Fazzini (C.A. 7, 1989),871 F.2d 635. A defendant must be warned "that his continuing action of not cooperating with his attorney [will] result in no additional counsel being appointed for him * * *." Id.
 {¶ 6} On the second day of trial, before the jury was seated, the court spoke to two lawyers willing to represent defendant. The court indicated its willingness to reopen voir dire and appoint either or both of them as defendant's attorney. Tr. 155, 162. After what could be construed as delay tactics by defendant, the court and defendant engaged in the following exchange.
 THE COURT: You said you wanted Mr. Rudy. I got him for you.
MR. WARD. He don't care about my best interests.
THE COURT: Now, you don't want him?
MR. WARD: You didn't let me consult with him.
 THE COURT: Every time you name somebody for you, every time you do, you do the same thing.
 MR. WARD: I don't know what you are telling me. They are not doing what I am asking them to do.
THE COURT: Okay.
 MR. WARD: You just said that I consulted with. He wants to do it right here. I should be able to go in the back and consult with him properly.
THE COURT: He did consult with you in the back.
MR. WARD: I just asked, could I consult with him again.
THE COURT: I said yes.
MR. WARD: I want to go in the back. That's private.
THE COURT: Okay. Your game is up.
MR. WARD: There is no game.
THE COURT: Sure ain't.
MR. WARD: There is no game.
THE COURT: All right. That's right.
Tr. 163-164.
 {¶ 1} The record is silent as to when the jury was empaneled and how much, if any, of the preceding dialogue, they heard. The mere chance, however, that the jury was present for any of this exchange amounts to clear prejudice to defendant. Standing alone, the "[y]our game is up" comment by the court is a personal condemnation of defendant which a jury should never hear.
 {¶ 2} Next, during its direct examination of its first witness, the state was told to show its exhibits to defendant before presenting them to the witness. After being shown one of the state's exhibits, defendant asked, "[w]hat am I supposed to do when I do observe what he is bringing in front of me?" Tr. 174. In response the court stated:
 The purpose of showing it to you is one to show that there is no element of surprise.
 So you need to examine the documents to either, one, indicate so that when you do your cross-examination, you can know whether or not you are familiar with it [sic] whether or not it has been properly marked, what the identification of the document is, and whether or not you need to ask any questions of it.
 So now that he has presented that document to you, he has to use that document now to ask questions that he has as it relates to State's Exhibit No. 4. And it can only be based upon the information that he has provided to you. So that's with each document.
Tr. 174. Later, defendant asked again "what am I supposed to get from my observation?" Tr. 178. The court told defendant that he was to "note any inconsistency" between the exhibits and the witness' testimony and then to cross-examine on those inconsistencies, if any. Tr. 178. Defendant replied that he was trying to understand and asked to see two of the state's exhibits again.
 THE COURT: Show him State's Exhibit No. 4 and State's Exhibit No. 5 together.
 MR. WARD: I need a pencil so I can write, please. It's kind of difficult.
THE COURT: Is that okay for me to give him a pencil?
MR. WARD: Can I have the handcuffs removed, please.
THE COURT: I am not in charge
MR. WARD: Please.
THE COURT: Just one moment.
MR. DEPUTY: I think we are going to leave them on today.
 THE COURT: I am not in charge of the security of the courtroom. And the deputy has indicated that he wants to leave the handcuffs on.
MR. WARD: It's going to be difficult for me to write.
 THE COURT: Why don't you try and let's see how you do. Do you want to write?
 Mr. Ward: No. Tr.179-180.
 {¶ 1} "Generally, a defendant is entitled to be present at his trial free of shackling. State v. Morgan (1992), 84 Ohio App.3d 229,231, 616 N.E.2d 941. `Where a defendant asserts that his right to a fair trial has been violated due to his being shackled, handcuffed, or otherwise restrained in the presence of the jury, he bears the burden of affirmatively demonstrating prejudice.' State v. Jones, 1992 Ohio App. LEXIS 4747 (Sept. 16, 1992), Wayne App. No. 2718, unreported, citingUnited States v. Diecidue (C.A.5, 1979), 603 F.2d 535, 549, certiorari denied (1980), 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 781; State v.Sublett, 1991 Ohio App. LEXIS 2869 (June 12, 1991), Medina App. No. 1971-M, unreported. It is within the trial court's discretion to use restraints to ensure the safety and orderly progression at trial. Statev. Carter (1977), 53 Ohio App.2d 125, 132, 372 N.E.2d 622." State v.Kreuzer, (Aug. 6, 1999), Greene App. No. 98-CA-100.
 {¶ 2} In the case at bar, there is no indication defendant had to be restrained during his trial. There is evidence, however, that he was continually admonished in front of the jury that he had no lawyer, and he was handcuffed. Moreover, although it is completely within the authority of the court to remove handcuffs — indeed, absent some violent behavior or attempt to escape, it is the duty of the court to remove handcuffs — the trial judge repeatedly yielded all authority on this point to the Deputy Sheriff.
 {¶ 3} When the opportunity to cross-examine the state's first witness arrived, defendant asked for his file. The court responded that she was unaware of any file and directed defendant to proceed with his cross-examination, but defendant declined to cross-examine the state's first witness. Tr. 186. As the trial proceeded and the state called the rest of its witnesses, the defendant continually expressed his confusion about how to conduct cross-examination. The following is a typical exchange between defendant and the court.
 MR. WARD: Your honor, how am I supposed to cross-examine her? How am I supposed to cross her? I don't know what to ask her.
THE COURT: That means that you have no questions, sir.
MR. WARD: I don't know what to ask her.
THE COURT: Thank you, ma'am. You may step down.
Tr. 197.
 {¶ 1} After the state rested its case, the court assisted defendant while he limped through a Crim.R. 29 motion for acquittal, which the court denied. Tr. 206. Defendant was instructed that if he chose to testify he could do so in the narrative without interruption. Tr. 207. The following comments appear on the record.
MR. WARD: I do not wish to participate.
THE COURT: I am sorry.
MR. WARD: No. I don't wish to participate, your honor.
THE COURT: So that means that you don't want to testify.
MR. WARD: No.
THE COURT: Are you sure?
MR. WARD: Yes.
 THE COURT: Okay. So you want to rest? Is that right? You don't want to present any witnesses? Any witnesses you want to call?
MR. WARD: Yes I do, but I don't have my file.
 THE COURT: You keep talking about this file that you don't have.
MR. WARD: The court file.
THE COURT: What court file do you have?
MR. WARD: That Mr. Mancino has. Mr. Mancino still has it.
THE COURT: Okay.
 MR. WARD: I need it to represent myself and I need it to represent myself, so I can subpoena witnesses that are necessary for me to pose the best defense I can.
 THE COURT: Mr. Ward, apparently you don't get it. Your case is in motion right now. And if there is something that you want to present, your time to do it is right now.
 MR. WARD: It's impossible for me to present any. I don't have it.
Tr. 207.
 {¶ 2} The court then hailed Mr. Mancino into court and asked him about defendant's file. Mr. Mancino indicated that the file did exist but that he did not have it with him. Despite Mr. Mancino's statements to the court that the file might contain names of witnesses defendant could call, the court ignored him. Instead, the court continued to ask defendant whether he was going to call Mr. Mancino as a witness. Defendant stated he did not need to call Mr. Mancino as a witness; he only needed the file. Tr. 207-236. The court then made the following remarks.
 THE COURT: Are there any other witnesses that you desire to call? The court hearing no further witnesses, this is the way this court has been dealing with you since five minutes to two. My clock now shows time at 2:25. Therefore, you haven't called any further witnesses. This court is going to deem your case closed.
 However, before we do that, I will inquire one last time about whether or not there are any further witnesses that you desire to call.
 MR. WARD: I want to call and subpoena whatever is necessary. He doesn't have the file at this time to give me.
THE COURT: Anything else?
MR. WARD: No, your honor.
 THE COURT: Especially if it's about your file from Mr. Mancino. I want the record to reflect that this court personally went downstairs, secured Mr. Mancino and had him here for giving you an opportunity to present him to this jury if you choose. * * *. You have informed this court that you have no desire to call him.
 {¶ 3} "So therefore, calling no further witnesses, this court is going to rest your case." Tr. 236-237. Following closing arguments, the case was given to the jury who convicted defendant of all three offenses.
 {¶ 4} The record in this case shows that defendant continually expressed his ignorance of the legal process, that he wanted an attorney, and that he needed one. Moreover, at almost every opportunity, the court chastised and reprimanded defendant in front of the jury and also required him to remain handcuffed during trial. The court's actions do not possess, even minimally, the strict neutrality and utmost impartiality required of members of the judiciary. Defendant suffered prejudice because the combination of events allowed the jury to decide his guilt based upon his physical appearance and the judge's attitude towards him, rather than on the evidence.
 {¶ 5} On the record before us, there is no reasonable way the court could have determined that this defendant intelligently and competently waived his right to counsel at any time. The trial court blatantly ignored all the requirements of Crim.R. 44 and forced defendant to proceed to trial without representation in direct violation of his constitutional rights. We conclude therefore that defendant did not knowingly, intelligently, or voluntarily ever waive counsel. For this reason alone, defendant's convictions must be reversed and this case remanded for further proceedings. Defendant's first, second, and third assignments of error are sustained.
 IV. Defendant Was Denied Due Process Of Law When The Court Overruled His Motion To Suppress.
 V. Defendant Was Denied Due Process Of Law When The Court Refused To Make Any Findings After Overruling On The Motion To Suppress.
 {¶ 1} Defendant argues the trial court should have suppressed the drugs found by police. Defendant maintains that even though the initial stop may have been proper, police did not have probable cause to have him exit his vehicle and then pat him down. After reviewing the record of the suppression hearing, however, we conclude police had sufficient information to search defendant.
 {¶ 2} Defendant was initially stopped because he had driven through what he admits was an inoperable traffic light. Defendant makes much of the fact that he was improperly cited for running a stop sign not a traffic light. We find the distinction meaningless because defendant admits he committed an illegal act. It is irrelevant how the citation was written after the stop because police had sufficient reason to stop him in the first instance.After being stopped, Roddy approached defendant's vehicle. Roddy testified that when defendant, who was alone in the vehicle, rolled the window down he saw smoke coming from inside the car and smelled the odor of marijuana.
 {¶ 3} "The voluntary act of rolling down an automobile window and the testimony of an experienced officer that he smelled the odor of marijuana is sufficient, by itself under the `plain smell' doctrine without all the other evidence in this case, to establish probable cause that defendant possessed marijuana." State v. Goulbourne (Apr. 12, 2001), Cuyahoga App. No. 78052; See State v. Moore (2000),90 Ohio St.3d 47, 734 N.E.2d 804.
 {¶ 4} Contrary to defendant's argument, the validity of the search in this case does not depend on how the ticket was written. Once he saw and smelled marijuana smoke, Roddy properly ordered defendant to leave his vehicle as part of the investigatory stop. Under the circumstances, there was sufficient information to support the police officer's belief that defendant possessed marijuana and perhaps other drugs.
 {¶ 5} Under the totality of the circumstances, and defendant's admission that he was smoking marijuana while driving, we conclude that Roddy had probable cause to pat defendant down and search his bulging pockets. As a result, the trial court properly denied defendant's motion to suppress the crack cocaine, cell phone, and the pager found on him during the search.
 {¶ 6} Next, defendant claims the court erred by not issuing findings as he requested. Crim. R. 12(E) provides in part that "[w]here factual issues are involved in determining a motion, the court shall state its essential findings on the record." In order to invoke the rule, the defendant must request that the court state its essential findings of fact in support of its denial of a motion. Bryan v. Knapp
(1986), 21 Ohio St.3d 64, 488 N.E.2d 142. Though defendant filed his request for findings the day after the court overruled his motion to suppress, we note that he did not object at trial, and he has therefore waived the error. State v. Williams (1977), 51 Ohio St.2d 112,364 N.E.2d 1364. More importantly, however, defendant has failed to show prejudice, nor has the absence of factual findings prevented us from independently reviewing the transcript from the suppression hearing. We find that record sufficient to support the court's denial of the motion to suppress. State v. Loza, 71 Ohio St.3d 61, 1994-Ohio-409,641 N.E.2d 1082; State v. Brewer (1990), 48 Ohio St.3d 50, 549 N.E.2d 491,501. Accordingly, we reject this argument. Defendant's fourth and fifth assignments of error are overruled.
 VI. Defendant Was Denied Due Process Of Law When The Court Referred Defendant For A Mental Evaluation And Failed To Give Defendant A Copy Of The Report Nor Conduct A Hearing.
 {¶ 1} In this assignment defendant claims the court erred in referring him for a psychiatric evaluation prior to sentencing him. He also claims the court erred because it did not give him a copy of the report or conduct a hearing. Defendant argues that he should have been referred for the psychiatric evaluation before trial not after. Based on our disposition of defendant's other assignments of error, this claimed error is now moot.
 {¶ 2} For the foregoing reasons, the judgment of the trial court is affirmed in part, reversed in part, and remanded.
ANN DYKE, P.J., CONCURS IN JUDGMENT ONLY; JAMES J. SWEENEY, J.,CONCURS.